Sara M. Athen (#022743)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
sathen@swlaw.com

*Attorneys for Defendants Zimmer, Inc.
 and Zimmer US, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DALE B. BULLOCK and KAREN BULLOCK, husband and wife,<br><br>Plaintiff,<br><br>v.<br><br>ZIMMER, INC., a Delaware corporation, ZIMMER US, INC., a Delaware corporation and ZIMMER SOUTHWEST, INC., an Arizona corporation,<br><br>Defendants. | No. 2:10-cv-00334-SRB<br><br>**DEFENDANTS ZIMMER, INC., AND ZIMMER US, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND**<br><br>(The Honorable Susan R. Bolton) |

Defendants Zimmer, Inc., and Zimmer US, Inc., (collectively "Zimmer") hereby respond to Plaintiffs' Motion to Remand and Memorandum of Law and respectfully request the Court deny Plaintiffs' Motion and retain jurisdiction over this matter.

**I.      INTRODUCTION**

On February 23, 2010, the plaintiffs, Dale and Karen Bullock ("Plaintiffs"), moved to remand this matter to state court. Defendants Zimmer, Inc., and Zimmer US, Inc., ("Zimmer"), respectfully ask the Court to deny Plaintiffs' motion in its entirety. Plaintiffs fraudulently joined co-defendant Zimmer Southwest, Inc. ("Southwest"), to destroy diversity and deprive this Court of jurisdiction. Absent Plaintiffs' fraudulent joinder of Southwest, complete diversity exists between Plaintiffs and Zimmer.

1    Plaintiffs' joinder of Southwest is fraudulent because Plaintiffs fail to allege any
2 cause of action for which Southwest may be held liable.  As a preliminary matter,
3 Southwest is not a "seller" as defined by Arizona law and cannot, therefore, be held
4 strictly liable to Plaintiffs.  Furthermore, Southwest played only a limited role with
5 respect to the orthopedic medical device at issue in this case.  Thus, Southwest cannot be
6 held liable under either negligence or fraudulent misrepresentation theories.  In short,
7 Southwest is not a proper defendant to this action, and Plaintiff's Motion to Remand
8 should be denied.

## II.  BACKGROUND

10    Plaintiffs filed their Complaint in the Superior Court of the State of Arizona in
11 and for the County of Maricopa on January 15, 2010.  Plaintiffs alleged three counts
12 against Southwest: (1) strict liability (Complaint at Count IV); (2) negligence (Complaint
13 at Count V); and (3) fraudulent misrepresentation and concealment (Complaint at Count
14 VI).  In addition, Plaintiffs presented a derivative claim for loss of consortium.  Plaintiffs
15 claim that Southwest sold a Durom Acetabular Component that was implanted into
16 Plaintiff Dale Bullock (the "Device"), and therefore that Southwest can be held strictly
17 liable.  For their negligence claim against Southwest, Plaintiffs claim that Southwest,
18 again as a seller, owed Plaintiffs a duty of care to warn Plaintiffs.  Finally, Plaintiffs
19 claim that Southwest is liable for fraudulent misrepresentation and concealment for
20 failing to test the Device, for failing to warn of alleged defects in the Device, and
21 promoting the Device despite knowledge of its alleged defects.

22    On February 17, 2010, Zimmer timely removed this case on the grounds that co-
23 defendant Southwest had been fraudulently joined.  *See Docket No. 1.*  In support of the
24 removal, Zimmer submitted an affidavit from Southwest's owner, Robert Godfrey,
25 attesting generally to Southwest's business relationship with Zimmer and specifically to
26 the role Southwest played with respect to the orthopedic medical device that was
27 ultimately implanted into Plaintiff Dale Bullock.  *See Docket No. 3* (hereafter "Godfrey
28 Aff."). Among other things, Mr. Godfrey attested that:

- 2 -

- Southwest is not owned or operated by Zimmer.  *See* Godfrey Aff., ¶ 2;

- Southwest "facilitates orders placed by hospitals for medical devices and orthopedic implants designed, manufactured, and sold by Zimmer and/or Zimmer US, . . . ,"  but Southwest does not buy, sell, or take title to Zimmer's products.  Godfrey Aff., ¶¶ 3, 11;

- Even if a Southwest representative has physical possession of one of Zimmer's orthopedic medical devices, that representative "never opens the package containing the product, and does not assemble, alter, modify, or inspect the product in any way."  Godfrey Aff., ¶ 6;

- Southwest does not design, manufacture, package, or label Zimmer's medical devices.  *See* Godfrey Aff., ¶ 7;

- Southwest has neither control over nor input into the warnings or instructions that accompany Zimmer's products, does not participate in drafting either the package inserts or surgical techniques that specify risks, warnings, and instructions for Zimmer's products, and has no independent knowledge of risks, warnings, or instructions for Zimmer's products.  *See* Godfrey Aff., ¶¶ 8-10;

- Southwest does not participate in surgeries during which Zimmer products are implanted or warn or instruct physicians about the implantation of Zimmer products.  *See* Godfrey Aff., ¶ 13;

- Southwest does not meet with patients, advise patients about their medical conditions, or make representations to patients about Zimmer's products.  *See* Godfrey Aff., ¶ 14; and

- Southwest was unaware of any risks, warnings, or instructions associated with the Device on the date that it was implanted into Plaintiff Dale Bullock, other than those included in the materials provided by Zimmer that accompanied the Device.  *See* Godfrey Aff., ¶¶15-16.

In their Motion to Remand, however, Plaintiffs characterize Mr. Godfrey's affidavit as "strained" and "disingenuous" and claim, instead, that Southwest must be a seller because Southwest is listed in publicly available documents (including the internet) as a seller or distributor of Zimmer's products.  Plaintiffs offer, in support of their motion, screenshots from the internet and excerpts from Zimmer's Annual Report and Southwest's Articles of Incorporation to bolster their claims, but provide no affidavits or

1 evidence to contradict Mr. Godfrey's representations about Southwest's actual role with
2 respect to Zimmer's products, generally, and the device at issue in this case, specifically.

### III. ARGUMENT

It is well-settled that "fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); see also *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). A defendant is fraudulently joined "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris*, 236 F.3d at 1067 (quoting *McCabe*, 811 F.2d at 1339). Indeed, a plaintiff fails to state a cause of action against a resident defendant when "the relevant claim is patently spurious, or when there is no reasonable basis for imposing liability on the resident defendant." *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F.Supp.2d 1089, 1102 (C.D. Cal. 2002). Furthermore, a "defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. The court may pierce the pleadings and take into consideration evidence from the defendant in the form of affidavits and depositions to determine whether the fraudulent joinder doctrine should be allowed to effect removal to federal court. *Morris,* 236 F.3d at 1061.

Zimmer respectfully submits that this matter was properly removed on the basis of fraudulent joinder. Based on the uncontested facts set forth in Mr. Godfrey's affidavit, Plaintiffs cannot recover against Southwest under any theory alleged. First, Southwest cannot be held strictly liable because Southwest is not a "seller" as that term has been defined by the Arizona Supreme Court for purposes of strict liability. Moreover, Southwest's role as to Zimmer's products generally and the Device at issue here is limited and does not give rise to a duty to the Plaintiffs. Where there is no duty, there can be no cause of action sounding in negligence. Finally, Southwest cannot be held liable under a theory of fraudulent misrepresentation or concealment because Southwest

1  had no duty to independently test and evaluate Zimmer's Device and, in any event, there
2  is no evidence that Southwest knew of any risks or warnings associated with the Device
3  that were not already disclosed to Plaintiffs by Zimmer.  In short, Plaintiffs cannot
4  recover against Southwest under any of the theories alleged, and this case is properly
5  before this Court.

6       **A.**    **Plaintiffs Cannot Maintain A Cause Of Action Against Southwest Under A Theory Of Strict Liability Because Southwest Is Not A "Seller" Under Arizona Law.**

8  In Arizona, a "seller" can be held strictly liable for a defective product. *See*
9  *Dillard Department Stores, Inc. v. Associated Merchandising, Corp.*, 782 P.2d 1187,
10 1189 (Ariz. Ct. App. 1989).  However, Arizona courts "have avoided a 'precise
11 definitional usage' of the term 'seller.'" *Antone v. Greater Arizona Auto Auction, Inc.*,
12 155 P.3d 1074, 1076 (Ariz. Ct. App. 2007) (citing *Unique Equip. Co. v. TRW Vehicle*
13 *Safety Sys., Inc.*, 3 P.3d 970, 976 (Ariz Ct. App. 1999)).  Arizona courts have both
14 refused to create "technical definitions in defining the categories of enterprise to which
15 the doctrine of strict liability should apply" and expressly rejected the use of the
16 definition of seller in Restatement (Second) of Torts § 402(A).  *See Torres v. Goodyear*
17 *Tire & Rubber Co.*, 786 P.2d 939, 943 (Ariz. Sup. Ct. 1990).  Instead, the determination
18 of whether a party qualifies as a "seller" for the purposes of being held strictly liable is
19 rooted in the policy considerations behind the theory of strict liability. *See id.*

20 Indeed, "[s]trict liability . . . should only be assessed against those defendants who
21 satisfy the policy consideration giving rise to the doctrine." *Dillard*, 782 P.2d at 1191;
22 *see also Antone*, 155 P.3d at 1076.  In Arizona, the key policy considerations are "the
23 dual concepts of profitable venture and preventative action.'  If both do not apply to the
24 plaintiff, then "the policy underlying the doctrine of strict liability is not satisfied."
25 *Dillard*, 782 P.2d at 1191-92.  The profitable venture prong focuses on "the economic
26 beneficiaries of the enterprise," *Id*. at 1190, while the preventative action prong focuses
27 on "the category of participants within the enterprise which is in most effective position
28 to take preventative action and to pass on most efficiently the alternative cost of

- 5 -

prevention." *Id*. The determination of whether an entity is a seller, then, is necessarily a fact specific inquiry. *See Torres*, 786 P.2d at 941.

But that determination is not without its guideposts. The courts assess various indicia of a party's "ownership and control" over the device at issue, such as whether a party can examine or inspect the device, whether a party derives economic benefit from the transaction, and whether the party has control or influence over the quality of the product. *See Dillard,* 782 P.2d at 1190-91. All of these factors spring from Arizona's professed desire to spread the risk and cost of loss "to those parties in the distribution chain who are best able to bear the cost and protect the consumer from defective products." *Antone*, 155 P.3d at 1076. No one factor or set of factors is dispositive in determining whether or not a party is a seller. Rather, it is the combination of factors in a given case that suggests that a party is engaged in a "profitable venture" and has the ability to take "preventative action" such that Arizona law will consider that entity to be a "seller" for the purposes of strict liability. *See Dillard*, 782 P.2d at 1191. In short, Arizona favors substance over form when assessing a party's potential liability.

As set forth in Mr. Godfrey's affidavit, the substance of Southwest's relationship with Zimmer militates against defining Southwest as a "seller." First and foremost, Southwest, "facilitates orders placed by hospitals for medical devices and orthopedic implants designed, manufactured, and sold by [Zimmer]," but does not buy, sell, or take title to Zimmer's products. Godfrey Aff., ¶¶ 3, 11. Moreover, Southwest does not design, manufacture, package, or label Zimmer's products and has neither control nor input over the warnings and instructions that accompany Zimmer's products. *See* Godfrey Aff., ¶¶ 7-8. Southwest never opens the devices that come into its possession, and does not assemble, alter, modify, or inspect them. *See* Godfrey Aff., ¶ 6. Thus, regardless of whether Zimmer's products pass through Southwest's possession, it is clear that Southwest does not exert the indicia of control that Arizona courts expect to find in a "seller." Most importantly, it is uncontroverted that Southwest has <u>nothing to do</u> with design, manufacture, inspection, or warnings pertaining to Zimmer's products – and

these are precisely the activities for which Plaintiffs seek to hold Southwest strictly liable.

Plaintiffs, however, focus on form over substance in characterizing Southwest as a seller. As a preliminary matter, Plaintiffs insist that because, in certain instances, Zimmer and/or Southwest broadly use the terms seller or distributor to describe Southwest's relationship with Zimmer, Southwest must be a "seller" for the purposes of strict liability. But this is exactly the kind of assessment that the Arizona courts have rejected. In Arizona, the question is not whether an entity finds itself in the chain of distribution, but whether the entity is both engaged in a profitable venture <u>and</u> has the ability to take preventative action with respect to potential defects such that the policy behind strict liability is satisfied. *See Dillard*, 782 P.2d at 1191-92 (holding that even though AMC is paid annual fees by Dillard for arranging Dillard's purchase of goods it does not qualify as a seller); *Antone*, 155 P.3d at 1079 (holding that Greater Arizona Auto Auction, Inc.'s profit on the auction of vehicles is not sufficient to make it a seller under Arizona law). In the end, it is not what Southwest is called, but what Southwest <u>actually does</u>. Thus, Plaintiffs' reliance on extrajudicial statements pertaining to the general nature of Southwest's business is misplaced.

So, too, is Plaintiffs' reliance on decisions relating to removal actions in other states misplaced. Put simply, product liability law is a creature of state law, and every state's law is different. Plaintiffs cite a handful of other courts who found that distributors were not fraudulently joined, but Plaintiffs conspicuously fail to discuss whether the underlying state law bears any resemblance to Arizona law. For example, Plaintiff cites *Moses v. Zimmer Holdings, Inc.*, 2007 WL 3036096 (S.D. Tex. 2007), in which the district court held that, under Texas law, merely "placing [a product] in the stream of commerce is sufficient" to incurring strict liability under the Texas Products Liability Act. *Moses v. Zimmer Holdings, Inc.*, 2007 WL 3036096 at *5 (S.D. Tex. 2007). Not so in Arizona. *See Dillard*, 782 P.2d at 1191 (holding that "merely pointing to an entity which is in the 'stream of commerce' or part of the 'enterprise' is not

1   enough"). Plaintiff also cites *Bitter v. White and Co., Inc.*, 560 N.E.2d 979 (Ill. App. Ct. 1990), in which the Illinois Court of Appeals held that an entity who obtains an economic benefit from the sale of a good and has a contract to market the good can be held liable related to those goods. *See id*. at 982. Again, not so in Arizona, where economic benefit alone is insufficient to subject an entity to liability for alleged defects. *See Antone*, 155 P.3d at 1079.

Plaintiffs cite no controlling authority to support their insistence that Southwest ought to be held strictly liable for the Device, and offer no evidence to contradict Mr. Godfrey's affidavit. Plainly, Southwest is not a "seller" under Arizona law and, as such, cannot be held strictly liable.

### B. **Plaintiffs Have Not Stated A Claim For Negligence Upon Which Relief Can Be Granted.**

Tellingly, Plaintiffs do not even attempt to establish a colorable basis for continuing to press their negligence claim against Southwest in their Motion to Remand. In fact, Plaintiffs make no mention of this claim whatsoever. This is because under Arizona law, Southwest owes no duty of care to the Plaintiffs, and, therefore the Complaint fails to state a ground on which relief can be granted. Like all negligence law, Arizona requires that a duty exist as a matter of law between the Plaintiffs and the Defendants as a prerequisite to tort liability. *See Professional Hockey Club, Inc. v. Hirmer*, 502 P.2d 164, 165 (Ariz. 1972). Neither a duty nor a relationship that would lead to the existence of a duty existed between Southwest and the Plaintiffs. The only duty Plaintiffs allege against Southwest is the duty imposed on a distributor. *See* Complaint at ¶¶ 59-60. As explained at length above, Southwest did not exert the requisite level of control or have the opportunity or ability to take the "preventative actions" Plaintiffs insist form the basis of their negligence claim. In short, Southwest did not owe Plaintiffs a duty of care related to a Device it did not control. Plaintiffs' negligence claim against Southwest therefore fails.

### C. Southwest Cannot Be Held Liable For Fraudulent Misrepresentations Or Concealment.

Once again, Plaintiffs do not attempt to claim that they have grounds to continue their fraudulent misrepresentation claim against Southwest in their Motion to Remand. Like their negligence claim, the Plaintiffs' claim against Southwest is based on its status as a seller, Complaint at ¶65. Southwest is not a seller. More importantly, an action for fraudulent misrepresentation requires, at its core, a representation, be it an affirmative representation or a failure to disclose. *Davis v. First Nat. Bank of Arizona*, 605 P.2d 37, 44 (Ariz. Ct. App., 1979). Southwest never had an opportunity to make a representation to Plaintiffs because Southwest did not interact with Plaintiffs or advise or instruct plaintiff Dale Bullock's physician. *See* Godfrey Aff. at ¶¶ 13-14. Moreover, Southwest cannot be held liable for a failure to disclose when it exerted no control over the warnings and had no independent knowledge of the risks. *See* Godfrey Aff. at ¶¶ 8-10, 16. Without an active or passive representation, there can be no misrepresentation. Plaintiffs' claim therefore fails.

### D. Even If This Case Is Remanded, Plaintiffs Are Not Entitled To Fees.

Though 28 U.S.C. §1447(c) gives this Court discretion to assess costs against Zimmer in the event that the Court determines that remand is appropriate, Zimmer respectfully submits that there is no good basis for doing so. Zimmer's removal was neither untimely nor repetitive. It did not significantly increase the cost or complexity of this matter. Rather, Zimmer had a good faith basis for removing this matter based on the fact-specific nature of Arizona's definition of a "seller."

Plaintiffs cite two unpublished, non-precedential orders to support their claim for fees. These orders, however, are distinguishable from this case because both orders award fees where removal was clearly erroneous. In *Yankton Sioux Tribe v. Wynne*, 2007 WL 2949001 (D. Ariz. 2007), the removing defendant failed either to consider or to understand the basic statutory requirements of diversity jurisdiction and did not even bother to submit a response to the Plaintiff's Motion to Remand. *See id*. at *2-3. In *Allo*

- 9 -

*v. American Family Mutual Ins. Co.*, 2008 WL 421765 (D. Ariz. 2008), the removing defendant cited only one relevant case and argued that the decision in that case was erroneous. *See id.* at *4. In contrast, Zimmer's removal was procedurally appropriate and based on controlling Arizona precedent. Plaintiffs have not pointed to any affirmative reason that fees should be assessed in this case, because there is none. Zimmer respectfully requests that, even if the Court grants Plaintiffs' Motion to Remand, Plaintiffs' request for fees be denied.

## IV. CONCLUSION

Because Plaintiffs cannot maintain any cause of action against Southwest, Southwest's joinder in this action was fraudulent. Zimmer respectfully asks the Court to deny Plaintiffs' Motion to Remand in its entirety and to retain jurisdiction over this matter.

DATED this 12th day of March, 2010.

SNELL & WILMER L.L.P.

By s/Sara M. Athen
Sara M. Athen
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
*Attorneys for Defendants Zimmer, Inc. and Zimmer US, Inc.*

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following registrants in the above matter:

Stephen I. Leshner
STEPHEN I. LESHNER, P.C.
1440 East Missouri Avenue, Suite 265
Phoenix, AZ  85014
*Attorneys for Plaintiffs*

s/Sara M. Athen

11297024.3